U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAY 19 2015

TONY R. MOORE, CLERK
BY _____
        DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **LARRY DUPREE ALDERSON** | DOCKET NO. 15-352; SEC. P |
| **VERSUS** | JUDGE DRELL |
| **CONCORDIA PARISH CORRECTIONAL FACLITY, ET AL.** | MAGISTRATE JUDGE KIRK |

### REPORT AND RECOMMENDATION

Pro se Plaintiff Larry Dupree Alderson filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on February 13, 2015. He was granted leave to proceed in forma pauperis on March 10, 2015. [Doc. #9] Plaintiff is a pre-trial detainee, incarcerated at the Concordia Parish Correctional Facility ("CPCF") in Ferriday, Louisiana. He names as defendants CPCF, Lance Moore, George Byrnes, Sheila Spinner, Kelly Moore, Jackie Johnson, Debra Cowan, and Harvey Bryant. Plaintiff complains that the defendants failed to protect him from an attack by other inmates and denied him medical care for his serious injuries.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### *Factual Allegations*

Plaintiff alleges that on December 22, 2014, he was attacked at CPCF by two Louisiana Department of Corrections inmates. The assailants stomped on and stabbed Plaintiff numerous times. Plaintiff never expressed concern for his safety prior to the

attack because he had specifically been transferred to CPCF from Washington Parish for his protection and safety. [Doc. #1, #11, p.1] Plaintiff claims that Warden Lance Moore, Chief of Security George Byrnes, Administrative Assistant Sheila Spinner, Captain Kelly Moore, and Captain Jackie Johnson were "department heads and in the position to make sure [Plaintiff was] housed in the correct dorm" and to make sure adequate surveillance and security checks were made. Plaintiff claims that he was misclassified, which resulted in him being housed with convicted prisoners instead of other pretrial detainees. [Doc. #11, p.2]

The day after the attack, Plaintiff complained to Lt. Harvey Bryant about his safety and medical needs. Bryant had Plaintiff placed in lockdown in a cell with other DOC inmates. [Doc. #11, p.2] Plaintiff was transported to the hospital that day, December 23, 2014, where he was diagnosed with bruised ribs and puncture wounds to his face, head, and body. [Doc. #11, p.2] Plaintiff was prescribed antibiotics and pain medication for his injuries. When he was returned to CPCF, he was placed in a cell used for suicide watch so that he could be monitored. [Doc. #11, p.2]

On December 24, 2014, Plaintiff asked Officer King for the medication that had been prescribed at the hospital, and King informed Plaintiff that he would have to wait until after the holidays to get the prescription filled. Plaintiff complained to a Lieutenant, who informed Plaintiff that the staff would be on

vacation until after the new year, so he could not get the prescription filled until then. [Doc. #11, p.2] Plaintiff alleges that he was left in excruciating pain without any medication for over a week. [Doc. #11, p.2]

Plaintiff seeks $1.5 million dollars in compensation for his suffering.

*Law and Analysis*

1. **CPCF as defendant**

To the extent that Plaintiff names CPCF as a defendant, his claim should be dismissed. Fed.R.Civ.P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether detention centers are entities with the capacity to sue or be sued. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." A parish prison facility is not a juridical person capable of being sued. A jail is "not an entity, but a building." See Jones v. St. Tammany Parish Jail, 4 F.Supp.2d 606, 613 (E.D.La. 1998).

2. **Failure to Protect**

The Eighth Amendment's prohibition against "cruel and unusual punishment" protects the rights of convicted prisoners; the rights of pre-trial detainees, such as the plaintiff, are protected by the "due process clause" of the Fourteenth Amendment. See Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996)(citations omitted).

Allegations of "failure to protect" and inadequate medical care are evaluated under a "deliberate indifference" standard, whether alleged under the Fourteenth Amendment by pre-trial detainees, or under the Eighth Amendment by convicted prisoners. See Hare, 74 F.3d at 640-43.

Thus, a pre-trial detainee's right to be protected from violence, as well as his right to adequate and prompt medical care, are both measured by the standard of "subjective deliberate indifference" as enunciated by the Supreme Court in Farmer v. Brennan, 511 U.S. 825, 837 (1994). Under Farmer's "subjective deliberate indifference" standard, a prison official cannot liable for failing to protect an inmate unless the official "knows of and disregards an excessive risk to inmate health or safety." Thus, in order to prevail on such claims, a civil rights plaintiff must allege and ultimately establish that the defendant officials: (1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and (2) that they actually drew the inference. Farmer, 511 U.S. at 837. Negligent inaction can never support a failure to protect claim. Farmer, 511 U.S. at 835; Hare, 74 F.3d at 642.

The legal conclusion of deliberate indifference must rest on facts clearly evincing "wanton" actions on the part of defendants. See Johnson v. Treen, 759 F.2d 1236, 1237 (5th Cir. 1985). In Smith v. Wade, 461 U.S. 30, 39 n. 8 (1983), the Court approved the

4

following definition of wanton – "'Wanton means reckless-without regard to the rights of others ... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure.' 30 American and English Encyclopedia of Law 2-4 (2d ed. 905) (footnotes omitted)."

Plaintiff has not alleged deliberate indifference to his safety. He neither felt nor expressed concern for his safety prior to the attack.  He specifically claims that his attack resulted from a mis-classification by Defendants Brynes and Spinner. [Doc. #11, p.2] This mis-classification is evidence of possible negligence, but not deliberate indifference. Plaintiff describes a mistake, not a conscious failure or any wanton action by the defendants that resulted in his harm.

Furthermore, the housing of convicted inmates with pretrial detainees is not per se unconstitutional.  The Fifth Circuit's decision in <u>Jones v. Diamond</u>, 636 F.2d 1364 (5th Cir. 1981), specifically states that limitations on physical facilities might justify housing pretrial detainees with convicted inmates, that

pretrial detainees have a right to be considered individually only to the extent that security and space requirements permit and that imposition of greater security measures is warranted if an inmate has a long record of prior convictions or is likely to be violent. See Jones, 636 F.2d. at 1374. The allegations presented by Plaintiff do not indicate that his being housed with the inmates who attacked him was unconstitutional.

Although Plaintiff was placed in a lockdown cell with other convicted prisoners after the attack and before being transported to the hospital, those inmates did not harm Plaintiff. Thus, Plaintiff suffered no injury from that specific action of Lt. Harvey Bryant.

To the extent that Plaintiff faults Warden Lance Moore, Chief of Security George Byrnes, Administrative Assistant Sheila Spinner, Captain Kelly Moore, and Captain Jackie Johnson because of their roles as department heads and supervisors, his claim fares no better. "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. denied, 508 U.S. 951 (1993). "Vicarious liability does not apply to §1983 claims." Pierce v. Texas Dept. of Crim. Justice, Inst. Div., 37 F.3d 1146, 1150 (5th Cir. 1994), cert. denied, 514 U.S. 1107

(1995). "Personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983), cert. denied, 464 U.S. 897 (1983). In other words, to the extent that plaintiff seeks to name supervisory officials, he must allege facts sufficient to demonstrate either personal involvement or the implementation of unconstitutional policies by those defendants. This he has not done.

The facts alleged do not establish that Warden Lance Moore, Chief of Security George Byrnes, Administrative Assistant Sheila Spinner, Captain Kelly Moore, and Captain Jackie Johnson, were subjectively aware of any specific risk of harm to Plaintiff or that they disregarded any known threats to his health and safety. Indeed, the facts alleged do not establish that anyone at CPCF was subjectively aware of a specific risk of harm to the plaintiff prior to the complained of attack. Plaintiff himself was not even aware of a specific risk of harm prior to the attack. Plaintiff has not presented allegations of deliberate indifference.

3. **Medical Care**

Like the failure to protect claim, in order to state a claim for damages inadequate medical care under 42 U.S.C. §1983, a prisoner must demonstrate that prison officials or other state actors exhibited "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Mere delay in receiving care is not in and of itself a constitutional violation.

See <u>Easter v. Powell</u>, 467 F.3d 459, 463 (5th Cir.2006); <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs that resulted in substantial harm. See <u>Easter v. Powell</u>, 467 F.3d 459, 461 & n. 2 (5th Cir. 2006)(<u>citing</u> <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 195 (5th Cir. 1993) ("[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm.")).

In this case, Plaintiff does not allege that the defendants failed to obtain care for him after the attack. Rather, he complains that he had to wait approximately one week to receive the medications prescribed by the hospital. Still, he has not alleged deliberate indifference. Plaintiff's medication was prescribed on Christmas Eve. He was informed that he would not be able to get the prescription immediately because of the Christmas Holiday, not because of wanton, reckless, or causeless actions by the defendants.

Additionally, Plaintiff does not allege that the one-week delay in obtaining his prescriptions resulted in substantial harm. Plaintiff does not allege that he suffered an infection from the delay in receiving antibiotics. He did not suffer "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes. See <u>Hill v. Dekalb Reg'l</u>

8

Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); Wesson, 910 F.2d at 283-84 (minor delay in escorting injured prisoner to prison infirmary for treatment of swollen wrists with some bleeding cannot be construed as deliberate indifference to serious medical needs); Whelen v. Penouilh, 2009 WL 86667 (E.D.La., 2009). No such permanent loss resulting from delay has been alleged in this case.

Plaintiff's claim amounts to a mere disagreement with the speed, quality or extent of medical treatment or even negligence, which does not give rise to a Section 1983 claim.

*Conclusion*

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's claim be **DENIED** and **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief can be granted under 28 U.S.C. §1915(e)(2)(B) and 1915A.

*Objections*

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being

9

served with a copy thereof. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.**

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this ___ day of May, 2015.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE